# In the United States Court of Federal Claims

Nos. 01-459C, 03-2515C
Filed April 10, 2006
TO BE PUBLISHED

_____

| | |
|---|---|
| INTERNATIONAL DATA<br>  PRODUCTS CORP., <br><br>                   Plaintiff, <br>v. <br><br>THE UNITED STATES OF AMERICA, <br><br>                   Defendant. | Termination of express contract;<br>compensation for work performed<br>thereafter pursuant to direction by<br>the Government; contract implied in fact;<br>manifestation of agreement and mutual<br>intent to contract; equitable adjustment;<br>constructive change; cardinal change;<br>*quantum meruit*; contract implied in law |

_____

Edward J. Tolchin, Fettmann, Tolchin & Majors, P.C., Fairfax, Virginia, for plaintiff.

John H. Williamson, Trial Attorney, Deborah A. Bynum, Assistant Director, David M. Cohen, Director, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C. for defendant.  John T. Lauro, Trial Attorney, Air Force Legal Services Agency and E. Michael Chiaparas, Deputy Director, Defense Contract Management Agency, of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

These consolidated cases are before the Court for decision following a one-day trial on damages held in Washington, D.C. on October 11, 2005.  At trial, the Court heard testimony from three witnesses.  Kevin Murphy, the Chief Financial Officer and Vice President of Administration of SteelCloud, Inc. ("SteelCloud") (formerly Dunn Computer Corp.) and David Costello, a staff engineer for SteelCloud, testified on behalf of plaintiff International Data Products Corporation ("IDP") regarding the costs that plaintiff incurred in performing warranty and software upgrade services after the Desktop V contract was terminated.[1]  Larry Tatem, a

_____

[1] "Warranty and software upgrade services" are also referred to by the parties as "warranty and upgrade services" and "warranty work."  The Court has similarly used these three

branch manager at the Defense Contract Audit Agency ("DCAA"), who prepared an audit report on the certified claim submitted by plaintiff, testified on behalf of defendant as to the reasons that DCAA questioned the costs that IDP seeks to recover in this case.

The parties filed Post-Trial Proposed Findings of Fact and Conclusions of Law on December 12, 2005, and responses thereto on January 20, 2006.  In Defendant's Responses to Plaintiff's Proposed Conclusions of Law, for the first time, defendant argued that there was no legal theory that would entitle plaintiff to recover damages in this Court for providing the warranty and upgrade services at issue.  *See* Def.'s Responses to Pl.'s Proposed Conclusions of Law at 1-2.  The Court determined that additional briefing on plaintiff's legal theory of entitlement to damages would be beneficial to both the parties and the Court.  The Court's Order of February 6, 2006 required plaintiff to file an additional brief on plaintiff's legal theory of entitlement to damages, and for defendant to file a response brief.  On February 14, 2006, plaintiff filed Plaintiff International Data Products Corporation's Reply to Defendant's Responses [to] Plaintiff's Conclusions of Law ("Plaintiff's Reply").  On February 21, 2006, defendant filed Defendant's Sur-Reply in Support of Its Responses to Plaintiff's Proposed Conclusions of Law ("Defendant's Sur-Reply").

The Court heard closing argument in Washington, D.C. on February 23, 2006.  After considering the parties' arguments, for the reasons set forth below, the Court holds that IDP has failed to identify any legal theory entitling it to relief in this Court, and the Court therefore directs the entry of judgment in favor of defendant.

## BACKGROUND

**A.     The Desktop V Contract**

On May 5, 1997, the Air Force awarded Contract F01620-97-D-001 ("Desktop V") to plaintiff IDP, a computer equipment manufacturer.  Def.'s Proposed Findings of Fact ¶ 1; Compl. (No. 01-459C) ¶ 5.  At the time that the Desktop V contract was awarded to IDP, IDP was a small minority-owned business and participant in the United States Small Business Administration's ("SBA") 8(a) program.  Def.'s Proposed Findings of Fact ¶ 2; Compl. (No. 01-459C) ¶ 4.

The Desktop V contract was a fixed-price, indefinite-delivery, indefinite-quantity ("IDIQ") contract to provide computer systems, computer and warranty services, and software products and upgrades to the Air Force and other Federal agencies.  *Int'l Data Prods. Corp. v. United States*, 64 Fed. Cl. 642, 643 (2005); Def.'s Proposed Findings of Fact ¶ 3.  The contract consisted of one base year and four one-year option periods, and required the Government to place a minimum quantity of $100,000 in orders during the base year.  *Int'l Data Prods.*, 64 Fed. Cl. at 644.  The contract specified that the exercise of an option did not re-establish defendant's

_____

terms interchangeably in this Opinion and Order.

obligation to order a quantity equivalent to the contract minimum. *Int'l Data Prods.,* 64 Fed. Cl. at 644; App. to Def.'s Motion for Summ. J. ("Def.'s App.") at 9.  The contract also stated that the total estimated quantities to be purchased by defendant under the contract would be $100 million. *Int'l Data Prods.,* 64 Fed. Cl. at 644; Def.'s App. at 9.

The contract required IDP to provide, *inter alia*, computer systems and "bundled support services."  Def.'s App. at 10.  The "Warranty" section of the contract stated:

> The Contractor **shall** provide users with a minimum 3 year, on-site, full parts and labor warranty for all offered products (excluding software) which includes CLINS 0001-0005. The Contractor **shall** provide users with a minimum 5 year (4 years on-site, 5th year return to IDP) full parts and labor warranty for all offered products (excluding software) for SLINS 0007AA through 0007CE. For SLINS 0007DA through 0007DU, [the] contractor <u>shall</u> provide a three year on site, 24 hour fix or replace on hardware warranty, and a two year upgrade warranty on software.

Def.'s App. at 45 (emphasis in original).

## B.      Termination of the Desktop V Contract

On February 5, 1998, IDP informed the SBA that  IDP's owners intended to sell IDP's stock to Dunn Computer Corporation ("Dunn Computer"), which was not an 8(a) concern.[2] Def.'s Proposed Findings of Fact ¶ 15.  As a result, Section 8 of the Small Business Act required the Government to terminate the Desktop V contract with IDP for convenience.  *Id.*  On February 20, 1998, the Air Force requested a waiver of the statutory requirement that the Government terminate the Desktop V contract pursuant to 15 U.S.C. § 637(a)(21)(B).  *Int'l Data Prods.*, 64 Fed. Cl. at 644; Def.'s Proposed Findings of Fact ¶ 6.   The SBA denied the waiver request, and IDP appealed the denial to the SBA's Office of Hearings and Appeals.  Compl. (No. 01-459C) ¶ 10.  On August 31, 1999, SBA's Office of Hearings and Appeals issued a decision sustaining the SBA's denial of the waiver request.  Def.'s Proposed Findings of Fact ¶ 7.

On October 8, 1999, contracting officer Kay Walker sent a written notice to IDP that terminated the Desktop V contract.[3]  Def.'s Proposed Findings of Fact ¶ 11.  The termination

---

[2]  In October 2000, Dunn Computer changed its name to SteelCloud, Inc.  *See* http://dc.internet.com/news/article.php/458651 (Sept. 13, 2000).

[3]  The parties disagree as to whether the Desktop V contract was terminated on August 31, 1999, the date that the SBA's Office of Hearings and Appeals sustained the denial of the Air Force's waiver request, or on October 8, 1999, the date that Ms. Walker issued the notice of termination.  *See* Pl.'s Reply to Def.'s Proposed Findings of Fact and Conclusions of Law at 9-12; Def.'s Proposed Conclusions of Law at 1-4.  Because the Court has determined that there is

notice stated:

> Contract No. F011620-97-D-0001 is completely terminated under clause
> DFARS 252.211-7000, Termination - - Commercial Items, effective immediately.
> Immediately stop all work, terminate subcontracts, and place no further orders
> except to the extent that you or a subcontractor wish to retain and continue for
> your own account any work-in-process or other materials.

*See* Def.'s App. at 322; *see also* Plaintiff's Trial Exhibit ("PX") 33.  At the time that Ms. Walker
sent the termination notice, the Government had ordered and paid IDP for at least $35 million in
products and services under the Desktop V contract.  *Int'l Data Prods.*, 64 Fed. Cl. at 644.

**C.**     **The Government's Direction that IDP Continue to Provide Warranty and Upgrade
Services**

        After the Desktop V contract was terminated, the Government took the position that the
termination did not affect IDP's obligation to provide warranties and upgrades for products that
had already been purchased by the Government pursuant to the contract.  *See* PX 33.  In fact, the
notice of termination that Ms. Walker sent to IDP specifically stated:

> This termination will not affect the rights or liabilities of the parties, arising under
> the contract or otherwise, concerning defects, guarantees or warranties relating to any
> articles or component parts furnished to the Government by the Contractor under the
> contract . . . nor the rights and liabilities of the parties concerning software upgrades
> as required by Section C of the contract.

*See* Def.'s App. at 322; *see also* PX 33.

        IDP's position at the time that it received the termination notice was that it was not
required to continue performing warranty and upgrade services under the Desktop V contract.
October 11, 2005 Trial Transcript ("Trial Tr.") at 159.  Shortly after IDP received the termination
notice, its CEO and counsel met with Ms. Walker at Gunter Air Force Base in Alabama to
discuss whether IDP would continue to provide the warranty services.  *Id.* at 42, 159.  At the
meeting, Ms. Walker informed IDP that if it did not continue doing the warranty work, both IDP
and Dunn Computer would be defaulted and debarred.  *Id.* at 42.

        In May 2000, Senior Air Force Attorney Wayne Davis engaged in e-mail negotiations
with counsel for IDP regarding the warranty and upgrade services.  *See* PX 26.  In an e-mail
dated May 2, 2000, Mr. Davis stated:

---

no legal theory entitling plaintiff to relief in this Court, it need not determine the date of
termination.

> IDP has shown that they are unwilling to fulfill their current contractual obligations.  Since past performance is such an important factor in the awarding of contracts, I cannot imagine the circumstances under which we would award a new contract to IDP.

PX 26-2.  Mr. Davis also stated that:

> IDP has breached its warranty obligations and must be prepared to accept the consequences.  I advised you some time ago that the consequences [c]ould include a request for debarment for IDP and Dunn Computer.

*Id.*

IDP continued to perform the warranty work because it believed that a debarment would be catastrophic for IDP and for Dunn Computer.  *See* Pl.'s Proposed Findings of Fact and Conclusions of Law at 3 ¶ 3; Trial Tr. at 37, 42.  Nevertheless, IDP continued to demand that the Government officially terminate the warranty and upgrade components of the contract.  Pl.'s Proposed Findings of Fact and Conclusions of Law at 3 ¶ 3; PX 34; Trial Tr. at 37, 42.  From the time that Ms. Walker issued the termination notice through April 2000, IDP did not intend to bill the Government for the warranty work.  Trial Tr. at 48-49.  Instead, IDP continued to hope that the Government would formally terminate the obligation to perform the warranty and upgrade services, or alternately, that IDP might receive additional compensation through some other means, such as an add-on contract or the award of another contract giving the company additional work.  Pl.'s Proposed Findings of Fact and Conclusions of Law at 3 ¶ 4; Trial Tr. at 183-84.

In a May 2, 2000 e-mail to Mr. Davis, IDP's counsel discussed the extensive efforts that IDP had made to resolve the warranty issue, stating:

> Among other things, we proposed depot (vs. onsite) maintenance, assigning subcontractors to you, BPAs[4] without guaranties combined with other concepts and so forth.  DAF rejected everything, and indeed, *never responded at all* except to say "no" . . . .

PX 26 (emphasis in original).  At trial on October 11, 2005, Mr. Murphy, similarly testified that IDP was:

> . . . moving forward in good faith to discuss a resolution, whether it be an issuance of another contract, BPA, depot warranty and maintenance, or subcontracting it out, or providing our inventory to a subcontractor so the Air Force could continue their own warranty.

---

[4] "BPAs" refers to blanket purchase agreements.  Trial Tr. at 40.

Trial Tr. at 40.

IDP's efforts to resolve the warranty issue were not successful.  When asked what the Government's response was to IDP's negotiating efforts, Mr. Murphy replied, "Nothing."  *Id.* IDP concluded that "[t]he Government proved by April 2000 that it would not budge on the matter."  Pl.'s Proposed Findings of Fact and Conclusions of Law at 3 ¶ 5.

**D.     IDP Ceases to Provide Warranty and Upgrade Services**

In April 2000, IDP determined that based on the company's financial situation and the cost of providing the warranty services, IDP had no choice but to cease performing the warranty work.  Pl.'s Proposed Findings of Fact and Conclusions of Law at 3 ¶ 5; Trial Tr. at 48.  On April 11, 2000, IDP sent a letter to Ms. Walker stating:

> IDP no longer can afford to comply with your demand [that it perform the warranty and upgrade services], and as the entire contract is terminated as a matter of law, we are writing to advise you that the company will no longer be providing continued warranty and upgrade services as no contract provisions exist under which these services can be provided.

PX 32.  Although IDP's letter to Ms. Walker was dated April 11, 2000, IDP did not immediately cease all work on that date.  Pl.'s Proposed Findings of Fact and Conclusions of Law at 4 ¶ 6; Trial Tr. at 50.  Instead, there was a wind-down period, beginning with the stoppage of new service orders and tying up loose ends on old service orders.  Pl.'s Proposed Findings of Fact and Conclusions of Law at 4 ¶ 6; Trial Tr. at 50.

**E.     IDP's Claims for Relief**

In its April 11, 2000 letter to Ms. Walker, IDP demanded a contracting officer's final decision that the Government was not entitled to continue to hold IDP liable for providing warranty services and software upgrades.  PX 32; 64 Fed. Cl. at 644.  The contracting officer's final decision, dated August 8, 2000, denied IDP's claim. Compl. (No. 01459C) ¶ 14.  On August 7, 2001 IDP filed case No. 01-459C in this Court, seeking a declaratory judgment "that defendant may not hold IDP to the [Desktop V] contractual provisions which could otherwise require IDP to provide warranty and software upgrade services to [the Department of the Air Force ("DAF")] . . . ." Compl. (No. 01-459C) ¶ 17.

On September 18, 2002, IDP filed a certified claim seeking termination costs and other related costs that IDP claimed it was owed by the Government. Compl. (No. 03-2515C) ¶ 13. The claim sought $ 1,247,915 for inventory and restocking costs, $ 440,990 for warranty services and software upgrades provided after the contract was terminated, and $ 40,300 for executive, legal, and accounting time spent preparing and prosecuting IDP's termination settlement

proposal.  *Id.*, *Int'l Data Prods.*, 64 Fed. Cl. at 644.[5]  The contracting officer issued a final decision on November 15, 2002 denying IDP any termination costs.  Compl. (No. 03-2515C) ¶ 14.  On October 30, 2003, IDP filed a second suit in this Court, No. 03-2515C, seeking to recover termination costs that had been denied in its certified claim. Compl. (No. 03-2515C) ¶ 16. By Order of this Court dated March 23, 2004, IDP's second suit was consolidated with its first.

On July 21, 2004, defendant filed Defendant's Motion for Summary Judgment. Defendant asked the Court to find that defendant was not liable for termination costs under the Desktop V contract's termination for convenience clause as a matter of law because defendant had placed orders in excess of the $100,000 minimum required by the contract.  *See* Def.'s Mot. for Summ. J. at 7-10.  In addition, defendant argued that defendant should not be liable for the costs that IDP incurred in performing the warranty and upgrade services after the Desktop V contract was terminated, because IDP had already been compensated for these costs as part of the unit prices of products previously ordered and paid for by the Government.  *Id.* at 10-12.

On August 20, 2004, plaintiff filed Plaintiff's Motion for Summary Judgment as to Liability, asking that the Court deny Defendant's Motion for Summary Judgment and grant summary judgment as to liability in favor of plaintiff.  Plaintiff asked the Court to find that plaintiff was entitled to recover termination costs under the Desktop V contract's termination for convenience clause because the Government had not ordered the minimum estimated quantity of $100 million worth of goods at the time that the contract was terminated.  Pl.'s Mot. for Summ. J. as to Liability at 10-16.  In addition, plaintiff asked the Court to find as a matter of law that IDP was not required to continue providing upgrade and warranty services after the contract was terminated for convenience.  *Id.* at 16-19.

On October 15, 2004, defendant filed Defendant's Opposition to Plaintiff's Cross Motion for Summary Judgment and Reply in Support of Defendant's Motion for Summary Judgment as to Liability.  On October 26, 2004, plaintiff filed Plaintiff's Reply Memorandum in Support of Motion for Summary Judgment as to Liability.  The Court held oral argument on Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment as to Liability on March 17, 2005.

## F.    The Court's Decision on the Parties' Cross-Motions for Summary Judgment

On March 28, 2005, the Court issued an Opinion and Order granting in part and denying

---

[5]  IDP's claim for $440,990 for post-termination warranty and upgrade work consisted of $126,990 in labor costs and $314,000 in third-party vendor and shipping costs.  Compl. (03-2515C) at Exhibit 1.  In the present case, IDP requests $372,964 in damages as a result of performing the warranty and upgrade services, consisting of $126,990 in labor costs and $245,974 in third-party vendor and shipping costs.  Pl.'s Proposed Findings of Fact and Conclusions of Law at 16.

in part Defendant's Motion for Summary Judgment and granting in part and denying in part Plaintiff's Motion for Summary Judgment as to Liability. *Int'l Data Prods.*, 64 Fed. Cl. 642. The Court held that IDP was not entitled to recover termination costs under the Desktop V contract's termination for convenience clause because the Government had ordered over $35 million in products and services under the Desktop V contract, substantially exceeding the contract minimum of $100,000 that the Government was obligated to purchase. *Id.* at 647. The Court also held that IDP was not required to continue to provide warranty and upgrade services after the Desktop V contract was terminated because 15 U.S.C. § 637(a)(21)(A)(2000) mandated that the Government fully terminate the contract for convenience once IDP was acquired by a non-8(a) concern. *Id.* at 650-51. In response to the Government's argument that plaintiff was required to continue to perform the warranty services because the Government had already fully paid for the services by purchasing the minimum quantities required by the contract, the Court held that under 15 U.S.C. § 637(a)(21)(A), "Congress determined that not every loss or inconvenience to the agency would prevent termination of the contract." *Id.* at 651.

Pursuant to the Court's Opinion and Order of March 28, 2005 and Order of May 20, 2005, a status conference was held on May 31, 2005. Based upon discussion with the parties at the May 31, 2005 status conference, the Court's Order of June 1, 2005 scheduled a trial on quantum for October 11-12 and 14, 2005.

## G.    IDP's Proof of Damages

The trial on quantum was held in Washington, D.C. on October 11, 2005, and was completed in a single day. Plaintiff presented testimony by Mr. Murphy, the Chief Financial Officer and Vice President of Administration for SteelCloud, and Mr. Costello, a staff engineer for SteelCloud, regarding the methodology that IDP used to calculate the cost of performing the warranty and upgrade services after the Desktop V contract was terminated.

Mr. Murphy testified that IDP had eight staff members who were completely or substantially dedicated to working on the Desktop V contract.[6]  Trial Tr. at 57-60. None of these employees maintained detailed time sheets documenting the time that they spent working on the Desktop V warranty and upgrade services after the contract was terminated. Trial Tr. at 58-59. Mr. Murphy asserted that the employees did not keep detailed time sheets because IDP did not originally intend to bill the Government for the additional warranty services, and because it was not a customary practice of IDP's business for employees to maintain time sheets segregating the time that they spent working on specific activities. Trial Tr. at 57-60. At the time of trial, seven of these employees were no longer employed by IDP and could not be located. Trial Tr. at 65-70. Mr. Costello, who had supervised warranty services, testified regarding his recollection of the percentage of each employee's time that was dedicated to working on the Desktop V contract.

---

[6]  The eight IDP employees who dedicated a significant amount of their time to the Desktop V contract were David Costello, Dario Uruburo, Paul Seyfrit, Sean Mahoney, Julio Manyari, Jesse Harris, Vicki Hiers, and Brian Anderson. Trial Tr. at 60.

Trial Tr. at 195-206.  In order to calculate damages attributable to the Desktop V contract with respect to the eight workers, IDP applied the percentages of the estimated time that each employee spent working on Desktop V matters to the wages and fringe costs associated with each employee for the relevant time period, and arrived at a total of $126,990.  Pl.'s Proposed Findings of Fact and Conclusions of Law at 6 ¶ 23.

In addition to internal labor costs, IDP incurred costs from hiring third-party vendors to perform field repairs under the Desktop V contract.  *Id.* at 7 ¶ 25.  Mr. Murphy testified that Astronautics Corporation of America ("Astronautics") was the primary third-party vendor that IDP used to support the Desktop V contract.  Tr. at 51.  Although Astronautics was primarily engaged by IDP to perform work under the Desktop V contract, on some occasions, Astronautics did perform other work.  Trial Tr. at 52; Pl.'s Proposed Findings of Fact and Conclusions of Law at 7 ¶ 26.  IDP did not set up a tracking system to identify which costs charged by Astronautics were attributable to performing warranty services for the Desktop V contact after the Desktop V contract was terminated.  Trial Tr. at 186-87.  In order to determine the percentage of the Astronautics bills that were attributable to the Desktop V contract for the time period at issue, Mr. Costello went through the Astronautics invoices and determined that 85% of the total payments to Astronautics were associated with the Desktop V contract.  Trial Tr. at 215-16; Pl.'s Proposed Findings of Fact and Conclusions of Law at 8 ¶ 30.  Based upon the 85% figure selected by Mr. Costello, IDP determined that it had paid Astronautics $213,914 for the post-termination Desktop V warranty work through February 2000.[7]  Pl.'s Proposed Findings of Fact and Conclusions of Law at 8 ¶ 29.

Occasionally, IDP used another third-party vendor, Accutek Services, Inc. ("Accutek"), for repair work in the Michigan area, because Accutek could provide field repair services in that region more cheaply than Astronautics.  Pl.'s Proposed Findings of Fact and Conclusions of Law at 9 ¶ 33.  IDP did not set up a tracking system to identify costs charged by Accutek to perform warranty services for the Desktop V contract after the Desktop V contract was terminated.  Trial Tr. at 186-87.  Mr. Costello reviewed the Accutek invoices for the relevant time period, and determined that 10% of the total Accutek costs were attributable to the Desktop V contract.  Pl.'s Proposed Findings of Fact and Conclusions of Law at 9 ¶ 34; Trial Tr. at 217-18.  Based upon the 10% figure estimated by Mr. Costello, IDP determined that it had incurred $8,471 in costs from Accutek's performance of the warranty and upgrade services after the Desktop V contract was

_____

[7] This figure does not include costs for services provided by Astronautics attributable to the post-termination Desktop V warranty work for March and April 2000.  *Id.*; Trial Tr. at 88. IDP paid Astronautics for these final two months of services by means of a barter transaction because it did not have cash on hand to pay for the services.  Pl.'s Proposed Findings of Fact and Conclusions of Law at 8 ¶ 29; Trial Tr. at 107-08.  IDP estimated that the approximate cost of the bartered inventory was $80,000, but did not seek to recover this amount as part of its claim because it determined that it would be too difficult to prove its value, especially since IDP had "discounted it to Astronautics."   Pl.'s Proposed Findings of Fact and Conclusions of Law at 8 ¶ 29; Trial Tr. at 56-57.

terminated.  Pl.'s Proposed Findings of Fact and Conclusions of Law at 9 ¶ 33.

In addition to labor costs and third-party vendor costs, plaintiff presented evidence of Federal Express shipping costs that IDP incurred shipping parts and items for the Desktop V warranty and upgrade services.  After the Desktop V contract was terminated, IDP did not set up a tracking system to identify which shipping charges were incurred for purposes of providing warranty and upgrade services for the Desktop V contract.  Trial Tr. at 159.  However, IDP staff reviewed the Federal Express invoices for the relevant time period, and determined that 45% of IDP's Federal Express costs were attributable to the Desktop V contract.  Pl.'s Proposed Findings of Fact and Conclusions of Law at 10 ¶ 36; Trial Tr. at 114-15.

Based upon this evidence, IDP determined that it had suffered total damages in performing the post-termination Desktop V warranty and upgrade services in the amount of $372,964 for the period September 1999 through April 2000.  Pl.'s Proposed Findings of Fact and Conclusions of Law at 10-11 ¶ 38.  These damages consisted of $126,990 in labor costs and $245,974 in third-party vendor and shipping costs incurred in performing the warranty and upgrade services after the Desktop V contract was terminated.  *Id.*

At trial, defendant presented testimony from Larry Tatem, a branch manager for the DCAA who was the lead auditor on the DCAA audit report that reviewed IDP's claim for warranty costs.  Def.'s Proposed Findings of Fact at 14 ¶ 73.  Mr. Tatem testified that DCAA questioned IDP's claim for warranty costs for two reasons:

> The first reason was the claim[ed] warranty cost was included in the prices of the equipment that was sold to the government, so that the government had already paid for the costs.  And then the second reason was there was a lack of adequate supporting documentation.

Trial Tr. at 249-50.  Mr. Tatem testified that DCAA questioned the labor costs claimed by IDP because IDP had not contemporaneously created any documentation that recorded weekly or by pay period the number of hours that each IDP employee spent performing warranty and upgrade services for the Desktop V contract.  Trial Tr. at 250-52.  Mr. Tatem also testified that after reviewing the Astronautics, Accutek, and Federal Express invoices produced by IDP during discovery, he could not identify any documents supporting how IDP had determined the percentage of the total costs that were attributable to the Desktop V warranty services.  Trial Tr. at 256-57.

## H.    The Parties' Post-Trial Briefs

The parties filed Post-Trial Proposed Findings of Fact and Conclusions of Law on December 12, 2005.  In Defendant's Proposed Conclusions of Law, the primary argument advanced by defendant was that plaintiff should not be permitted to recover any damages for the post-termination warranty and upgrade services because plaintiff could not reliably estimate the portion of its total costs incurred during the relevant time period that were attributable to the

Desktop V work. *See* Def.'s Proposed Conclusions of Law at 4-18. On January 20, 2006, the parties filed responses to the Post-Trial Proposed Findings of Fact and Conclusions of Law.

In Defendant's Responses to Plaintiff's Proposed Conclusions of Law, for the first time during the quantum phase of this case, defendant argued that there was no legal theory to support plaintiff's claim for damages. Def.'s Responses to Pl.'s Proposed Conclusions of Law at 1-2. Defendant argued that plaintiff was not entitled to recover expectation damages for performing the warranty and upgrade services, because "[p]laintiff does not seek to recover anything that it expected to receive pursuant to the Desktop V contract . . . . Instead, plaintiff seeks to recover the costs that it allegedly incurred to perform the warranty services after August 31, 1999, the date that plaintiff alleges the contract should have been terminated." Def.'s Responses to Pl.'s Proposed Conclusions of Law at 2. Defendant also argued that plaintiff was not entitled to recover restitution damages because the warranty and upgrade services provided after the Desktop V contract was terminated were not undertaken in performance of plaintiff's contractual obligations. *Id.* at 2. Finally, defendant argued that plaintiff was not entitled to recover reliance damages because plaintiff's damages "did not result from any alleged reliance upon the contract." *Id.*

Because defendant advanced a new argument in its Post-Trial Response Brief, the Court issued an Order on February 6, 2006, requesting additional briefing from the parties on plaintiff's legal theory of entitlement to damages. Pursuant to the Court's Order, on February 14, 2006, plaintiff filed Plaintiff's Reply. In this filing, plaintiff argued that it was entitled to recover damages because:

> . . . under the circumstances of this case, the "expectation" assessment with which the court is dealing is, in reality, an assessment for a contract "extra," which, by its nature, is an expectation assessment. In other words, this case is no different from a case in which a Government agency demands work which is not contractually required, and the court then mandates the Government to pay for the extra work as a contract change or, if the work is a cardinal change to the contract, to compensate the contractor for breach damages.

Pl.'s Reply at 2.

On February 21, 2006, defendant filed Defendant's Sur-Reply. Defendant again argued that plaintiff could not recover expectation damages because the Desktop V contract provided that the unit prices for equipment included three-year warranties on parts and labor, and therefore, "IDP could not have reasonably expected at the time that it entered the contract that it would receive any additional payment for providing warranty services . . . ." Def.'s Sur-Reply at 3.[8] In addition, defendant argued that plaintiff could not recover pursuant to a constructive or

---

[8]  Defendant's assertion that the Desktop V contract "included three-year warranties on parts and labor" appears to be an oversimplification. As discussed *supra* at page 3,

cardinal change because "the Government never changed the type or increased the amount of warranty services performed by IDP." *Id.* at 8.

## DISCUSSION

Pursuant to the Tucker Act, the Court of Federal Claims has jurisdiction to render judgment upon "any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract . . . ." 28 U.S.C. § 1491(a)(2) (2000); *Alliant Techsystems, Inc. v. United States,* 178 F.3d 1260, 1264 (Fed. Cir. 1999)*;Remediation Constructors, Inc. v. United States*, 68 Fed. Cl. 162, 164-65 (2005); *CW Gov't Travel, Inc. v. United States*, 61 Fed. Cl. 559, 579 (2004), *aff'd*, 163 Fed. Appx. 853 (Fed. Cir. 2005).  A prerequisite to such jurisdiction is the submission of a claim to the contracting officer and a final decision by the contracting officer on that claim. *Alliant Techsystems*, 178 F.3d at 1264; *Info. Sys. & Networks Corp. v. United States*, 68 Fed. Cl. 336, 341 (2005).

On September 18, 2002, IDP submitted a certified claim seeking a contracting officer's decision as to whether IDP was entitled to termination costs under the Desktop V contract. Compl. (03-2515C) ¶ 13.  This claim included $440,990 in costs for warranty and upgrade services provided after the Desktop V contract was terminated.[9] *Id.*  On November 15, 2002, Termination Contracting Officer Paul Slemons denied IDP's claim in its entirely.  *Id.* at Exhibit 1.  The final decision denying IDP's claim stated, in part:

---

the contract stated:

> The Contractor **shall** provide users with a minimum 3 year, on-site, full parts and labor warranty for all offered products (excluding software) which includes CLINS 0001-0005. The Contractor **shall** provide users with a minimum 5 year (4 years on-site, 5th year return to IDP) full parts and labor warranty for all offered products (excluding software) for SLINS 0007AA through 0007CE. For SLINS 0007DA through 0007DU, [the] contractor <u>shall</u> provide a three year on site, 24 hour fix or replace on hardware warranty, and a two year upgrade warranty on software.  (emphasis in original).

Def.'s App. at 45.

[9]  Although the claim for third-party vendor costs has been slightly reduced from the claim that was originally submitted to the contracting officer, the original claim was undoubtedly one which "g[ave] the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987); *J. Cooper & Assocs. v. United States*, 47 Fed. Cl. 280, 285 (2000); *Hawkins and Powers Aviation, Inc. v. United States*, 46 Fed. Cl. 238, 243 (2000).

-12-

> Third Party Maintenance - ($0) The proposed amount consists of claimed warranty labor of $126,990 and third party maintenance/shipping and receiving costs of $314,000. These costs are included in the initial purchase price of the ordered items and do not relate to the termination.

*Id.*

IDP has satisfied the jurisdictional prerequisites by submitting a claim for compensation for the warranty and upgrade services to the contracting officer and receiving a final decision on its claim. Accordingly, the Court has jurisdiction over IDP's claim pursuant to 28 U.S.C. § 1491(a)(2).[10]

## I.      Plaintiff Cannot Recover Expectation Damages

Plaintiff asserts that it is entitled to recover expectation damages for performing warranty and upgrade services after the Desktop V contract was terminated. *See* Pl.'s Proposed Findings of Fact and Conclusions of Law at 11 ¶ 1. Plaintiff argues:

> [t]o be sure, IDP did not expect to perform these services. That is so because the parties' contract did not require the services. But, the fact that the Government forced IDP to provide this work improperly is precisely the reason that IDP is entitled to "expectation" damages in this case. IDP is entitled to receive the benefit of its bargain, and is owed compensation because it did not receive the benefit of not needing to perform this work . . . .

Pl.'s Reply at 1-2.

In response, defendant argues that expectation damages have no application to this case because "[t]he only expectation interest that IDP could have reasonably held when it entered the Desktop V contract was that the Government would place at least the minimum order set by the contract, and would pay IDP for the equipment that the Government ordered." *See* Def.'s Sur-Reply at 2. Defendant contends that because the unit prices for equipment under the Desktop V contract included some amount to cover the cost of performing warranty work, the contract provided no basis for IDP to expect that it would receive any additional compensation for performing warranty work required by the contract. *Id.* at 3.

---

[10]   The Contract Disputes Act of 1978 applies to "any express or implied contract" by an executive agency for the procurement of, *inter alia*, property and services. 41 U.S.C. § 602(a) (2000); *see also Deponte Invs., Inc. v. United States*, 54 Fed. Cl. 112, 115 (2002); *Frymire v. United States*, 51 Fed. Cl. 450, 456 (2002). The Court has jurisdiction over plaintiff's claim in this case pursuant to 28 U.S.C. § 1491(a)(2) as a claim by a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, 41 U.S.C. § 609(a)(1) (2000), "including a dispute concerning termination of a contract," here, the Desktop V contract.

A party's "expectation interest" is the "interest in having the benefit of [its] bargain by being put in as good a position as [it] would have been in had the contract been performed." RESTATEMENT (SECOND) OF CONTRACTS § 344(a)(1981); *S. Cal. Fed. S&L Ass'n v. United States*, 422 F.3d 1319, 1324 (2005); *Bluebonnet Sav. Bank FSB v. United States*, 67 Fed. Cl. 231, 236 (2005). It is intended to protect "the expectation that the injured party had when he made the contract." RESTATEMENT (SECOND) OF CONTRACTS § 344(a) cmt. a. Expectation damages are recoverable provided they are actually foreseen or reasonably foreseeable, are caused by the breach of the promisor, and are proved with reasonable certainty. *S. Cal. Fed. S&L Ass'n,* 422 F.3d at 1334.

In its decision on the parties' cross-motions for summary judgment, the Court found that plaintiff was not obligated to continue performing warranty and upgrade services pursuant to the Desktop V contract. *Int'l Data Prods.*, 64 Fed. Cl. at 651. However, the Court did not make any finding as to whether the Government had already paid for the warranty and upgrade services as part of the unit prices that it paid for equipment purchased under the Desktop V contract. Furthermore, the Court did not find that defendant's demands that plaintiff continue performing the warranty and upgrade services after the Desktop V contract was terminated constituted a breach of contract.

To recover damages for a breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach. *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). The Government can only be liable for breach if the plaintiff can establish the existence of a contract. *See Cornejo-Ortega v. United States*, 61 Fed. Cl. 371, 373 (2004) ("For plaintiff to recover on his breach of contract claim, he must establish the existence of a valid contract with defendant. . . ."); *see also Lasalle Partners v. United States*, 48 Fed. Cl. 797, 807 (2001). Therefore, the preliminary inquiry that the Court must address is not whether plaintiff could have reasonably expected additional compensation for performing the post-termination warranty and upgrade services, but rather, whether those services were provided pursuant to either an express contract or a contract implied in fact.

A.     **The Post-Termination Warranty and Upgrade Services Were Not Provided Pursuant to an Express Contract**

In the Court's decision on the parties' cross-motions for summary judgment, the Court found that "termination pursuant to 15 U.S.C. § 637(a)(21)(A) must be of all work under the contract." *Int'l Data Prods.*, 64 Fed. Cl. at 650. Therefore, once the decision of the SBA's Office of Hearing and Appeals sustaining the SBA's denial of the waiver request became final, the Government was required to fully terminate the Desktop V contract for convenience and IDP was not obligated to continue to provide warranty and upgrade services under the contract. *Id.* at 650-51. Once a contract has been terminated for convenience, the act is treated as final, and the contractor's obligations to complete the terminated work are considered to be at an end. JOHN CIBINIC, JR. & RALPH C. NASH, JR., ADMINISTRATION OF GOVERNMENT CONTRACTS 1085 (3rd Ed. 1995).

Plaintiff argues that the Government breached the Desktop V contract "because the Desktop V contract ended and the [G]overnment refused to end it." February 23, 2006 Closing Argument Transcript at 20. At the same time, plaintiff concedes that the post-termination warranty and upgrade services were not provided pursuant to the Desktop V contract.

In IDP's April 11, 2000 letter to Ms. Walker informing her that IDP would no longer be performing the warranty services, IDP's president, Thomas Dunne, stated:

> . . . as the entire contract is terminated as a matter of law, we are writing to advise you that the company will no longer be providing continued warranty and upgrade services as no contract provisions exist under which these services can be provided.

PX 32. Similarly, during Oral Argument on the parties' cross-motions for summary judgment on March 17, 2005, counsel for plaintiff asserted:

> Once you say that we are right with respect to that, that they are required to terminate the contract, and that means to terminate the contract, then we win because there is no vehicle. The relationship is broken because there is no vehicle by which they can demand the work.

March 17, 2005 Tr. at 20. Counsel for plaintiff also argued that:

> Once you bring an end to the relationship, the vehicle is over. It's no longer just an option that's not being exercised; the vehicle is dead. There is no more basis. The contracting officer goes away. Everything goes away. That's the end of it . . . .

March 17, 2005 Tr. at 60. As IDP asserted, the Desktop V contract was required to be terminated in its entirety.

The termination notice for the Desktop V contract issued by Ms. Walker stated that "[c]ontract No. F011620-97-D-0001 is ***completely*** terminated under clause DFARS 252.211-7000, Termination - - Commercial Items, effective immediately." PX 33 (emphasis added). Concededly, the termination notice also stated that the termination did not "affect the rights and liabilities of the parties, arising under the contract or otherwise, concerning defects, guarantees or warranties . . . ." PX 33. However, in the Court's March 28, 2005 Opinion and Order on the parties' cross-motions for summary judgment, the Court held that the Government was incorrect in asserting that the warranty and upgrade obligations survived the termination. As counsel for plaintiff argued, no contract existed after the termination, and accordingly, the post-termination

warranty and upgrade services were not provided pursuant to the Desktop V contract.[11]

The Court finds plaintiff's argument that "not needing to perform" the warranty work was a benefit that IDP expected to receive pursuant to the Desktop V contract unconvincing for similar reasons.  As a preliminary matter, IDP has failed to identify any provision in the Desktop V contract itself discussing whether IDP would be required to perform warranty and upgrade work after the contract had been terminated.  In addition, as IDP itself argued, the Desktop V contract was fully terminated as a matter of law at the time that the Government directed IDP to perform the post-termination warranty and upgrade services.  The direction to perform those services could not constitute a breach of a contract that no longer existed.

**B.     The Post-Termination Warranty and Upgrade Services Were Not Provided Pursuant to a Contract Implied in Fact**

Alternately, plaintiff appears to argue that an expectation interest arose from an implied-in-fact contract formed after the Desktop V contract was terminated.  Plaintiff argued that "[b]y requiring the work, the Government obligates itself to pay for it, in order to put the contractor 'in as good a position as he would have been in had the contract been performed.'" Pl.'s Reply at 5.  Therefore, the Court must also determine whether plaintiff provided the warranty and upgrade services pursuant to a contract implied in fact.

A contract implied in fact is one "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from the conduct of the parties

---

[11]  Even if the post-termination warranty and upgrade services were deemed to have been provided pursuant to the Desktop V contract, plaintiff would not be entitled to additional compensation for those services.  The unit prices for goods purchased pursuant to the Desktop V contract included some amount to cover the cost of performing the warranty and upgrade services.  Def.'s App. at 45.  IDP argues that it had not been fully compensated for the post-termination warranty and upgrade services because IDP priced the warranty work component of the Desktop V contract based upon an assumption that all four one-year option periods would be exercised.  Pl.'s Reply at 8-10.  However, in the Court's March 28, 2005 Opinion and Order, the Court held that defendant was only required to order a minimum of $100,000 worth of goods under the contract and that defendant had ordered products and services under the contract in excess of 350 times that amount.  *Int'l Data Prods.*, 64 Fed. Cl. at 647-48.  IDP may have hoped that the Government would exercise all four option periods, but the Government was not obligated to do so, particularly where, as here, a federal statute mandated the complete termination of the contract once IDP was acquired by a firm that did not qualify for the SBA's 8(a) program.  If IDP priced the warranty component of the Desktop V contract based upon the assumption that all four option periods would be exercised, it did so at its own risk.  *See id.* at 647-48; *see also United Int'l Investigative Servs., Inc. v. United States*, 56 Fed. Cl. 619, 629 (2003) ("the bidder, especially one as experienced as [plaintiff], bore the risk of adequately recovering its costs within the boundaries of the fixed price that it bid.").

showing, in light of the surrounding circumstances, their tacit understanding." *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998) (quoting *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597 (1923)); *see also Hercules, Inc. v. United States*, 516 U.S. 417, 423-24 (1996). To establish the existence of an implied-in-fact contract, a plaintiff has the burden of proffering evidence establishing the same four criteria needed to demonstrate an express contract: (1) mutuality of intent to contract, (2) lack of ambiguity in offer and acceptance, (3) consideration, and (4) actual authority of the government representative whose conduct is relied upon to bind the Government in contract. *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997); *Lewis v. United States*, 70 F.3d 597, 600 (Fed. Cir. 1995); *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed. Cir. 1990); *Night Vision Corp. v. United States*, 68 Fed. Cl. 368, 384 (2005).

No contract implied in fact can exist where there is no evidence of a mutual intent to contract or a meeting of the minds with the Government. *See Smith v. United States*, 58 Fed. Cl. 374, 383 (2003), *aff'd*, 110 Fed. Appx. 898 (Fed. Cir. 2004); *see also Medina Constr., Ltd. v. United States*, 43 Fed. Cl. 537, 558 (1999) ("[T]he documents before the Court do not demonstrate a meeting of the minds of the parties which is inferred from the parties' conduct such that a tacit understanding and agreement was reached as would demonstrate an implied-in-fact contract.") (internal quotations omitted).

Plaintiff's continued assertions that it had no obligation to perform the warranty and upgrade services evidences the absence of an agreement to perform the services. In IDP's October 11, 2000 letter to Ms. Walker, IDP demanded a decision that:

> . . . IDP has no contractual obligations to DAF, including any obligations under the warranty and upgrade provisions of the agreement. IDP further demands a contracting officer's decision that DAF has no contractual rights regarding IDP, including any rights under the warranty and upgrade provisions of the agreement.

PX 32. In Plaintiff's Motion for Summary Judgment as to Liability, plaintiff argued that:

> . . . the Government cannot enforce IDP's warranty upgrade commitment against it, absent an explicit post-termination agreement from IDP reserving to the Government a right to enforce the warranty or upgrade provisions after the contract is terminated. There is no such agreement here.

Pl.'s Mot for Summ. J. as to Liability at 19.

Moreover, the evidence in the record indicates that the Government never agreed that plaintiff should be compensated for performing the additional warranty work. To the contrary, the evidence demonstrates that the Government consistently denied that any additional compensation was required and adhered to its position that the warranty and upgrade services had already been paid for as part of the unit prices of the equipment purchased under the Desktop V contract. For example, the contracting officer's August 8, 2000 decision stated:

Since all costs for warranty and software upgrade support were included in the
equipment pricing, IDP invoiced and was duly compensated in full for warranty
support and software upgrades when payment was rendered for each delivery order
issued.  IDP has not offered to rebate to the Government the costs for such warranty
support and software upgrades.  Thus, IDP demands to be released from its contractual
obligations for which it has been paid in full without refunding to the customer
the amounts paid for those obligations.  This would be unjust enrichment and we
will not agree to it.

Compl. (04-159C) Ex. 4.  These statements clearly evidence that the Government did not agree
to pay any additional compensation to IDP for the warranty services at issue in this case.  In fact,
the Government's statements suggest that the Government believed that it would be entitled to
damages from IDP if IDP discontinued performing the services.

The evidence also indicates that IDP itself did not believe that there was an agreement
with the Government to compensate IDP for the post-termination warranty and upgrade services.
Mr. Murphy testified that IDP continued performing them "[f]or fear of the default and
debarment."  Trial Tr. at 38; *see also* Pl.'s Proposed Findings of Fact and Conclusions of Law at
3 ¶ 3 ("Such a debarment would have been catastrophic for these companies, so IDP continued
the work.").  In addition, during Oral Argument on the parties' cross motions for summary
judgment on March 17, 2005, in response to a question from the Court as to whether a finding
that IDP was not entitled to termination costs would moot the issue of whether IDP was required
to continue performing the upgrade and warranty work, counsel for IDP responded:

I don't think it would, and the reason is, is because we continued this work
based upon the government's specific directives.  Our position is that that was
wholly apart from the contract, that they were forcing us to do this work under
threats of default and debarment.

March 17, 2005 Oral Argument Tr. at 16.

IDP did endeavor to persuade the Government to provide additional compensation for
providing the warranty and upgrade services.  Although plaintiff may have hoped that the
Government would enter into an agreement to compensate IDP for providing the warranty and
upgrade services, the Government did nothing that would cause plaintiff to reasonably believe
that its hope would be realized.  Indeed, when asked what the Government's response was to
IDP's efforts to negotiate a means for IDP to be compensated for the warranty services through
alternate means such as an add-on contract, Mr. Murphy replied, "Nothing."  Trial Tr. at 40.
Even extensive negotiations in which the parties demonstrate hope and intent to reach an
agreement are not sufficient in themselves to establish a contract implied in fact.  *Essen Mall
Properties v. United States*, 21 Cl. Ct. 430, 443 (1990); *Pacific Gas & Electric Co. v. United
States*, 3 Cl. Ct. 329, 339 (1983), *aff'd*, 738 F.2d 452 (Fed. Cir. 1990).  Certainly, one-sided
attempts at negotiation where one party manifests no intent to change its position or come to an
agreement are insufficient to do so.

For these reasons, IDP did not provide the warranty and upgrade services pursuant to an express or implied-in-fact contract with the Government. The Desktop V contract had been terminated at the time that the warranty and upgrade services were performed. The evidence indicates that there was clearly disagreement as to whether IDP was required to perform the services, and whether IDP was entitled to any additional compensation. Accordingly, no implied-in-fact contract was formed.

## II.     There is No Basis for IDP to Recover Under a Theory of Constructive Change, Equitable Adjustment or Cardinal Change

Plaintiff also argues that "this case is no different from a case in which a Government agency demands work which is not contractually required, and the court then mandates the Government to pay for the extra work as a contract change or, if the work is a cardinal change to the contract, to compensate the contractor with breach damages." Pl.'s Reply at 2. Plaintiff takes the position that it did not bargain to perform the post-termination warranty and upgrade services, and therefore, "the work was outside the scope of the contract." *Id.* at 7.

The Court will first address plaintiff's argument that it is entitled to recover damages pursuant to an equitable adjustment. Equitable adjustments are corrective measures utilized to keep a contractor whole when the Government modifies a contract. *Bruce Constr. Corp. v. United States*, 163 Ct. Cl. 97, 100, 324 F.2d 516, 518 (1963); *see also North American Constr. Corp. v. United States*, 56 Fed. Cl. 73, 78-79 (2003) ("the spirit and purpose of an equitable adjustment is to benefit the contractor and make it whole for changes ordered by the government."). Essentially, they are fair price adjustments under a contract clause for changed work. *See, e.g.* 48 C.F.R. § 52.243-4 (2005); *see also* RALPH C. NASH, JR., STEVEN L. SCHOONER & KAREN R. O'BRIEN, THE GOVERNMENT CONTRACTS REFERENCE BOOK 215 (2nd Ed. 1998). Thus, equitable adjustments are distinguished from damages, which are awarded in the absence of a contract clause calling for an equitable adjustment. *See e.g. SAB Constr., Inc. v. United States*, 66 Fed. Cl. 77, 84 (2005) ("The plaintiff seeks these costs either as an equitable adjustment pursuant to a contract clause, or as damages for breach of contract."); *see also* 8 NASH & CIBINIC REPORT ¶ 1, *Pricing Defective Specification Claims: Does the Theory Matter?* (Jan. 1994).

Although plaintiff's argument is somewhat ambiguous, it appears that plaintiff contends that it is entitled to an equitable adjustment as a result of a constructive change to the Desktop V contract. A constructive change occurs where a contractor performs work beyond the contract requirements, without a formal order under the changes clause, either by an informal order of the Government or due to the fault of the Government. *Miller Elevator Co. v. United States*, 30 Fed. Cl. 662, 678 (1994); *see also Lathan Co., Inc. v. United States,* 20 Cl. Ct. 122, 128 (1990) (citing *Chris Berg, Inc. v. United States*, 197 Ct. Cl. 503, 525, 455 F.2d 1037, 1050 (1972)) ("A constructive change generally arises where the Government, without more, expressly or impliedly orders the contractor to perform work that is not specified in the contract documents."). Where a contract contains the standard changes provision and the contracting officer, without issuing a formal change order, requires the contractor to perform work or to utilize materials

which the contractor regards as being beyond the requirements of the pertinent specifications or drawings, the contractor may elect to treat the contracting officer's directive as a constructive change order and prosecute a claim for an equitable adjustment under the changes provision of the contract. *Ets-Hokin Corp. v. United States*, 190 Ct. Cl. 668, 674, 420 F.2d 716, 720 (1970).

The Desktop V contract incorporated DFARS clause 252.211-7002, "Changes - commercial items," as it existed as of May, 1991. See Def.'s App. at 50. DFARS clause 252.211-7002(b)(1) (May 1991) permits the contracting officer to make unilateral changes only in the methods of shipment, packaging, packing, or place of delivery. In the event of such a unilateral change, the contractor must assert its right to an equitable adjustment within 30 days by submitting a detailed proposal to the contracting officer. 48 C.F.R. § 252.211-7002(b)(2). All other changes within the general scope of the contract must be made bilaterally, by written agreement of the parties. § 252.211-7002(c). As a preliminary matter, the record contains no evidence that IDP ever sought or agreed to an equitable adjustment for performing the post-termination warranty and upgrade services pursuant to the changes clause.

More importantly, as discussed *supra* at Section I.A., at the time that plaintiff performed the post-termination warranty and upgrade services, the Desktop V contract no longer existed. Therefore, it would be impossible for the additional work to constitute a constructive change to the contract. Nor was it possible for an equitable adjustment to be made pursuant to the Desktop V contract's changes clause, because the changes clause (and the contract as a whole) was no longer in effect.

For the same reason, plaintiff cannot recover damages under the theory of cardinal change. A cardinal change is a breach that occurs when the Government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for. *Krygoski Constr. Co., Inc. v. United States*, 94 F.3d 1537, 1543 (Fed. Cir. 1996)*;AT & T Communications, Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1205 (Fed. Cir. 1993); *Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443, 465 (2001); *Allied Materials & Equip. Co., Inc. v. United States*, 215 Ct. Cl. 406, 409, 569 F.2d 562, 563-64 (1978). By definition, then, a cardinal change is so profound that it is not redressable under the contract, and thus renders the Government in breach. *AT&T*, 1 F.3d at 1205; *Green Mgmt. Corp. v. United States*, 42 Fed. Cl. 411, 429 (1998); *Air-A-Plane Corp. v. United States*, 187 Ct. Cl. 269, 275, 408 F.2d 1030, 1032-33 (1969).

In this case, there could be no cardinal change to the Desktop V contract because at the time that the post-termination warranty and upgrade services were provided, the entire contract had been fully terminated as a matter of law. In the absence of a contract, there is no basis for IDP to recover under a cardinal change theory of breach. Thus, the concepts of constructive change, equitable adjustment and cardinal change have no applicability to this case.

**III.    The Court of Federal Claims Lacks Jurisdiction Over Plaintiff's *Quantum Meruit* Claim**

It appears that plaintiff may also be asserting a claim for recovery in *quantum meruit*. It is not entirely clear whether plaintiff is asserting *quantum meruit* as a measure of damages or as an equitable theory of recovery. In Plaintiff's Reply, plaintiff states that "[w]hereas IDP believes that this is a breach of contract entitling the company to lost profits, consequential damages, and the like, it has limited its claim solely to its costs – essentially, a quantum meruit amount." Pl.'s Reply at 10. At Oral Argument on the parties' cross-motions for summary judgment on March 17, 2005, when asked how IDP proposed calculating the amount that it would be due for providing the warranty services, counsel for IDP replied:

> It would be, more or less, a quantum meruit type of calculation, and that is, indeed, the calculation we have done. The government may have some problems and may have some issues with the way we made our calculation, but it was a quantum meruit calculation.

March 17, 2005 Oral Argument Tr. at 20-21.

At common law, *quantum meruit* referred to quasi-contractual recovery for the value of services rendered. *Fluor Enters., Inc. v. United States*, 64 Fed. Cl. 461, 495 n.31 (2005) (citing *Urban Data Sys., Inc. v. United States*, 699 F.2d 1147, 1154 n.8 (Ct. Cl. 1983)). Its modern incarnation has been said to proceed on the theory "that if one party to a transaction provides goods or services to the other party that the parties intended would be paid for, but the recipient refuses to pay for them, the law will imply a contract for the recipient to pay the fair value of what it has received." *Perri v. United States*, 340 F.3d 1337, 1343 (Fed. Cir. 2003); *see also United States v. Amdahl Corp.*, 786 F.2d 387, 393 (Fed. Cir. 1986).

Recovery in *quantum meruit* is based upon a contract implied in law. *Perri*, 340 F.3d at 1343 (citing *Fincke v. United States*, 230 Ct. Cl. 233, 246, 675 F.2d 289, 296 (1982)). A contract implied in law is one in which there is no actual agreement between the parties, but the law imposes a duty in order to prevent injustice. *Algonac Mfg. Co. v. United States*, 192 Ct. Cl. 649, 673-74, 428 F.2d 1241, 1255-56 (1970), *Mega Construction Co., Inc. v. United States*, 29 Fed. Cl. 396, 470 (1993). The Court of Federal Claims lacks jurisdiction over contracts implied in law. 28 U.S.C. § 1491(a)(1)(2000); *Hercules*, 516 U.S. at 423-24; *Trauma Service Group*, 104 F.3d at 1324; *D.V. Gonzalez Elec. & Gen. Contrs., Inc. v. United States*, 55 Fed. Cl. 447, 459-60 (2003).

An exception arises in situations where a plaintiff provides goods or services to the Government pursuant to an express contract and the Government refuses to pay for them because of defects in the contract that rendered it invalid or unenforceable. *Perri*, 340 F.3d at 1343-44; *Dureiko v. United States*, 62 Fed. Cl. 340, 358-59 (2004). In such a circumstance, it would be unfair to permit the Government to retain the benefits of the bargain that it had made with plaintiff without paying for them. Therefore, the Court of Federal Claims has used *quantum*

*meruit* as a basis for awarding the plaintiff the fair value of what it supplied to the Government. *Perri*, 340 F.3d at 1344.  In *United States v. Amdahl Corp.*, the Court of Appeals for the Federal Circuit explained:

> Where a benefit has been conferred by the contractor on the government in the form of goods or services, which it accepted, a contractor may recover at least on a *quantum valebant* or *quantum meruit* basis for the value of the conforming goods or services received by the government prior to the rescission of the contract for invalidity. The contractor is not compensated under the contract, but rather under an implied-in-fact contract.

786 F.2d at 393.

For the reasons discussed *supra* at Section I.B., plaintiff did not provide the post-termination warranty and upgrade services pursuant to a contract implied in fact.  Nor was there a mere defect in the Desktop V contract rendering it invalid or unenforceable – the contract was fully terminated and no longer existed at the time IDP performed the post-termination warranty work.  Accordingly, plaintiff's *quantum meruit* claim can only be based upon an alleged contract implied in law, a claim over which this Court lacks jurisdiction.

## CONCLUSION

IDP did not provide the post-termination warranty and upgrade services pursuant to an express or implied-in-fact contract and therefore there is no basis for IDP's claim for expectation damages.  Similarly, there is no basis for IDP to recover under a theory of constructive change, equitable adjustment or cardinal change because at the time the Government terminated the contract and directed that plaintiff perform the post-termination warranty and upgrade services, the Desktop V contract had been fully terminated as a matter of law.  Thus, as IDP has argued, no contract existed between plaintiff and the Government at the time IDP performed the post-termination warranty work.  Finally, plaintiff's claim for recovery in *quantum meruit* is based upon an alleged contract implied in law – a claim over which this Court lacks jurisdiction.  In summary, IDP has failed to identify any legal theory entitling it to damages in this Court. Accordingly, the Court directs the Clerk to enter judgment in favor of defendant.  Each party will bear its own costs.

IT IS SO ORDERED.

    s/ George W. Miller
GEORGE W. MILLER
Judge